No. 96,884

In the Matter of DANIEL HEATH LAMPSON, *Respondent*.

147 P.3d 143

Opinion filed December 8, 2006.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*Daniel Health Lampson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Daniel Heath Lampson, of Wichita, an attorney admitted to the practice of law in Kansas. The formal complaint filed against the respondent alleged that his conduct violated KRPC 1.1 (2005 Kan. Ct. R. Annot. 356) (competence), KRPC 1.3 (2005 Kan. Ct. R. Annot. 369) (diligence), KRPC 1.4 (2005 Kan. Ct. R. Annot. 383) (communication), KRPC 1.5 (2005 Kan. Ct. R. Annot. 397) (fees), KRPC 1.15 (2005 Kan. Ct. R. Annot. 431) (safekeeping property), KRPC 8.4(c) (2005 Kan. Ct. R. Annot. 504) (misconduct), and Supreme Court Rule 207 (2005 Kan. Ct. R. Annot. 271) (duties of the bar and judiciary).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The panel made the following findings of fact and conclusions of law together with its recommendations to this court:

### "FINDINGS OF FACT

"Based upon the Respondent's admissions and the evidence introduced at the hearing, the Hearing Panel finds the following facts, by clear and convincing evidence:

"1.    Daniel Heath Lampson (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 19542. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Wichita, Kansas. . . . The Respondent was admitted to the practice of law in the state of Kansas on April 28, 2000.

"DA9388

"2. Leslie Zuercher-Sublett retained the Respondent to represent [her] before the Kansas Court of Appeals on a post-divorce child support matter. Ms. Zuercher-Sublett paid the Respondent $1,000 for attorney fees and $200 for costs.

"3. After retaining the Respondent, Ms. Zuercher-Sublett did not hear from the Respondent regarding the representation. Ms. Zuercher-Sublett called and left several messages for the Respondent seeking information regarding the appeal. The Respondent did not return Ms. Zuercher-Sublett's telephone calls. Additionally, on one or more occasions, Ms. Zuercher-Sublett called and left a message for the Respondent so she could schedule an appointment with the Respondent. Ms. Zuercher-Sublett was never able to meet with the Respondent regarding the appeal.

"4. The Respondent failed to keep Ms. Zuercher-Sublett informed regarding any progress made in the case.

"5. After requesting and receiving three extensions of time within which to file a brief, on April 13, 2004, the Respondent filed a brief in behalf of Ms. Zuercher-Sublett with the Kansas Court of Appeals. The Respondent failed to provide Ms. Zuercher-Sublett with a copy of the brief filed in her behalf.

"6. On April 14, 2004, Jason Oldham, Chief Deputy Clerk of the Appellate Courts wrote to the Respondent and informed him that the brief failed to comply with the Kansas Supreme Court rules. Mr. Oldham directed that the Respondent file an amended brief within 15 days. The Respondent failed to correct the brief as directed.

"7. On June 28, 2004, the Kansas Court of Appeals issued an order to the Respondent ordering him to correct his brief on or before July 16, 2004. The Respondent failed to inform Ms. Zuercher-Sublett that the Court issued an order regarding the brief. On July 16, 2004, the Respondent filed a corrected brief in behalf of Ms. Zuercher-Sublett.

"8. On September 15, 2004, the Kansas Court of Appeals heard oral arguments in Ms. Zuercher-Sublett's case. The Respondent failed to appear at the argument.

"9. On September 24, 2004, counsel for Ms. Zuercher-Sublett's ex-husband filed a motion for costs and attorney fees. The Respondent failed to inform Ms. Zuercher-Sublett that opposing counsel was seeking costs and attorney fees. On October 29, 2004, the Kansas Court of Appeals granted the motion and ordered that Ms. Zuercher-Sublett pay $1,141.00 in costs and attorney fees pursuant to Kan. Sup. Ct. R. 7.07.

"10. On November 22, 2004, Ms. Zuercher-Sublett filed a complaint regarding the Respondent with the Disciplinary Administrator's office. David Rapp, Chairman of the Wichita Bar Ethics and Grievance Committee appointed Ron W. Paschal to investigate the case. On December 7, 2004, Mr. Paschal wrote to the Respondent and requested that the Respondent contact him and forward a copy of his written response to the complaint. Mr. Paschal granted the Respondent two extensions of time within which to provide a written response to the com-

plaint. The Respondent did not provide a written response to the complaint. On January 4, 2005, Mr. Paschal again wrote to the Respondent. Mr. Paschal directed that the Respondent provide the written response to the complaint no later than January 7, 2004. The Respondent failed to forward a written response to the complaint to Mr. Paschal.

"DA9460

"11.   Doyce Adamson retained the Respondent to represent him in an action for divorce. Mr. Adamson paid the Respondent $3,000 in attorney fees. The Respondent was the fourth attorney to enter his appearance in behalf of Mr. Adamson in the divorce case.

"12.   On June 16, 2004, the Court held a hearing on the divorce. The Court divided the assets between Mr. Adamson and his ex-wife. As a result of the division of assets, Mr. Adamson was awarded $16,477.80.

"13.   On June 18, 2004, $16,477.80 was transferred into the Respondent's trust account in behalf of Mr. Adamson. The Respondent failed to inform Mr. Adamson that he received the money in his behalf.

"14.   Mr. Adamson contacted the Respondent on a number of occasions. The Respondent failed to return Mr. Adamson's calls.

"15.   Between June 18, 2004, and August 20, 2004, the Respondent converted the $16,477.80 to his own use.

"16.   Mr. Adamson did not learn that the Respondent was to be holding $16,477.80 in his behalf until December, 2004.

"17.   Thereafter, Mr. Adamson contacted Herb Brackeen, an attorney with whom the Respondent shared office space. Mr. Adamson informed Mr. Brackeen that the Respondent was to be holding money in his behalf. Mr. Brackeen questioned the Respondent regarding the money and the Respondent assured Mr. Brackeen that he would provide Mr. Adamson with an accounting of the money. The Respondent failed to provide Mr. Adamson with an accounting. Later, Mr. Brackeen contacted the Respondent's parents regarding Mr. Adamson's money. The Respondent's parents paid Mr. Adamson the $16,477.80 in their son's behalf.

"DA9481

"18.   In the summer of 2004, Jake Feil filed a *pro se* motion to enforce visitation with his child. At the hearing on the motion, the Respondent, counsel for the mother, approached Mr. Feil and suggested that Mr. Feil relinquish his parental rights and allow the step-father to adopt the child. Mr. Feil agreed to do so. The Respondent informed Mr. Feil that he would prepare the necessary documents for Mr. Feil's signature.

"19.   Thereafter, the Respondent failed to contact Mr. Feil. Mr. Feil called the Respondent by telephone several times. The Respondent failed to return Mr. Feil's telephone calls. The Respondent did, however, respond to an electronic mail message sent by Mr. Feil. In this response, the Respondent assured Mr. Feil that he would forward the appropriate documents. The Respondent stated that once he received the signed documents back, he would schedule an immediate hearing.

"20.    Eventually, in October, 2004, the Respondent forwarded documents to Mr. Feil by mail. Mr. Feil executed the documents and returned them to the Respondent.

"21.    The Respondent failed to proceed with the adoption. Additionally, the Respondent failed to explain to Mr. Feil that he failed to proceed with the adoption because an action in divorce had been filed between the mother and step-father.

"DA9538

"22.    On June 18, 2004, Jacqueline Richardson retained the Respondent to represent her in an action for divorce. During the representation, in addition to other conditions, Ms. Richardson informed the Respondent that she wanted to have child support set up with a withholding order and she wanted to claim the minor child on her tax return each year.

"23.    The Respondent told Ms. Richardson that he had entered into negotiations but that there was a problem with child support and her husband wanted to alternate the child income tax credit.

"24.    In August, 2004, the Respondent called Ms. Richardson and informed her that an agreement had been reached and that they 'met our terms.' The Journal Entry was filed on August 25, 2004. The Respondent failed to provide a copy of the Journal Entry to Ms. Richardson.

"25.    Thereafter, Ms. Richardson attempted to contact the Respondent on a number of occasions. She left telephone messages for the Respondent and the Respondent failed to return the messages.

"26.    Approximately one month later, Mrs. Richardson realized that the Court had not issued an income withholding order. Mrs. Richardson was not receiving any child support.

"27.    Because she was unable to get into contact with the Respondent, Ms. Richardson contacted opposing counsel regarding child support. The attorney for Ms. Richardson's former husband informed Ms. Richardson that an income withholding order had not been entered and that her former husband was to be paying child support directly to her.

"28.    Eventually, Ms. Richardson obtained a copy of the Journal Entry. After she reviewed it, she learned that it did not comply with her understanding of the agreement. The Journal Entry provided that the income tax child credit would alternate between Ms. Richardson and her former husband. Ms. Richardson confronted the Respondent regarding this matter. The Respondent assured Ms. Richardson that he would resolve the issues by filing a motion to amend.

"29.    The Respondent agreed to the terms of the Journal Entry without Ms. Richardson's approval.

"30.    Although the Respondent did not provide her with a copy, Ms. Richardson later learned that the Respondent filed a motion to modify in behalf of Ms. Richardson and a motion to withdraw from the representation of Ms. Richardson.

"31.    At the hearing on the motion to modify, Ms. Richardson's former husband did not appear in court. Ms. Richardson did not receive child support and Ms. Richardson's former husband left the state of Kansas.

"32. Ms. Richardson filed a complaint with the Disciplinary Administrator's office regarding the Respondent's representation. Ron Paschal was again assigned to investigate the complaint. Mr. Rapp and Mr. Paschal wrote to the Respondent and directed him to file a written response to the complaint. The Respondent failed to provide a written response to the complaint.

"DA9539

"33. In May, 2004, James Patterson retained the Respondent to represent him in a post-divorce child support and child custody matter. Mr. Patterson paid the Respondent a flat fee of $500.00.

"34. After he was retained and through the summer of 2004, Mr. Patterson attempted to contact the Respondent regarding the representation. Mr. Patterson was unable to contact the Respondent.

"35. In August, 2004, Mr. Patterson received a letter from the Respondent along with enclosures provided by opposing counsel. After receiving the materials from the Respondent, Mr. Patterson continued to try to contact him. Again, Mr. Patterson was unable to contact the Respondent.

"36. Finally, in October, 2004, Mr. Patterson contacted the Respondent. The Respondent informed Mr. Patterson that he did not agree with opposing counsel's income figures and that he would prepare a child support worksheet and send it to opposing counsel.

"37. Following their conversation in October, 2004, Mr. Patterson again attempted to contact the Respondent to learn the status of the matter. Again, Mr. Patterson was unable to contact the Respondent.

"38. On January 25, 2005, [Mr. Patterson] received an envelope from the Respondent. In the envelope was a motion from opposing counsel to settle the Journal Entry. According to the documents, the Court had scheduled a hearing for February 1, 2005.

"39. On January 31, 2005, Mr. Patterson attempted to contact the Respondent. Mr. Patterson was informed that the Respondent was out of the office until at least February 28, 2005.

"40. The hearing on the motion pending in Mr. Patterson's case was continued. Neither the Respondent nor his office informed Mr. Patterson of the new court date. Mr. Patterson was able to learn of the new court date on his own.

"41. At some point, Mr. Patterson was informed that he could retain a new attorney and that his file would be made available for that purpose. Mr. Patterson repeatedly attempted to retrieve his file but the Respondent's office staff was unwilling to provide Mr. Patterson with his file.

"42. Mr. Patterson retained a new attorney and paid a second fee. Mr. Patterson's new attorney was able to settle the pending matter in less than one month's time.

"43. Mr. Patterson filed a complaint with the Disciplinary Administrator's office. The Disciplinary Administrator's office and Mr. Rapp directed the Respondent to file a written response to the complaint filed by Mr. Patterson. The Respondent never provided a written response to the complaint.

### "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 4.1, KRPC 8.4(c), and Kan. Sup. Ct. R. 207, as detailed below.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Ms. Zuercher-Sublett when he failed to properly key the facts of the appellate brief to the record on appeal. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.   KRPC 1.2(a) provides:
'A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.'
The Respondent failed to abide by Ms. Richardson's decisions regarding the settlement of the divorce action. Specifically, the Respondent agreed to a Journal Entry that included terms contrary to Ms. Richardson's position. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.2(a).

"4.   Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Ms. Zuercher-Sublett, Ms. Richardson, and Mr. Patterson. Specifically, the Respondent failed to provide diligent representation to Ms. Zuercher-Sublett when he failed to timely correct his brief on appeal. The Respondent failed to diligently represent Ms. Richardson when he failed to timely request a withholding order from the Court and when he failed to provide her with a copy of the Journal Entry. Finally, the Respondent violated KRPC 1.3 by failing to provide diligent representation to Mr. Patterson when he failed to timely resolve the post-divorce motions in behalf of Mr. Patterson. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Zuercher-Sublett, Ms. Richardson, and Mr. Patterson, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"5.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to timely respond to requests for information from Ms. Zuercher-Sublett, Mr. Adamson, Ms. Richardson, and Mr. Patterson. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6. 'When the lawyer has not regularly represented [a] client, the basis or rate of the fee shall be communicated to the client, preferably in writing.' KRPC 1.5(b). In this case, the Respondent failed to communicate the basis or rate of his fee to Mr. Adamson. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.5(b).

"7. Attorneys must safeguard client's property. KRPC 1.15(a) prohibits attorneys from commingling their funds with the funds of their clients, as follows:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

The Respondent violated KRPC 1.15(a) when he took the $16,477.80 [and] transferred [it] into his trust account in behalf of Mr. Adamson and converted it to his personal use. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

"8. KRPC 4.1(a) provides that '[i]n the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.' *Id.* The Respondent violated KRPC 4.1(a) when he informed Mr. Feil that once he signed the consent to adoption, the Respondent would schedule an immediate hearing on the adoption. The Respondent failed to inform Mr. Feil that the mother of the child and the step-father were in the process of getting divorced. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 4.1(a).

"9. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he knowingly converted Mr. Adamson's $16,477.80. Additionally, the Respondent engaged in conduct that involved dishonesty when he informed Ms. Richardson that he had reached an agreement with opposing counsel and that they 'met our terms.' As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"10. The Kansas Supreme Court Rules require attorneys to cooperate in disciplinary investigations. According to Kan. Sup. Ct. R. 207(b),

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

In this case, the Respondent violated Kan. Sup. Ct. R. 207(b) by failing to provide a written response to the initial complaints filed by Ms. Zuercher-Sublett, Ms. Richardson, and Mr. Patterson. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to safeguard property. Additionally, the Respondent violated his duty to his client to provide diligent representation and adequate communication.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. The Respondent converted Mr. Adamson's property to his own use and provided false information to Mr. Richardson. As such, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. Included in this case are five complaints. Some of the complaints involve similar misconduct. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.2(a), KRPC 1.3, KRPC 1.4(a), KRPC 1.5(b), KRPC 1.15(a), KRPC 4.1(a), KRPC 8.4(c) and Kan. Sup. Ct. R. 207(b). Therefore, the Hearing Panel concludes that the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide written responses to the complaints. The Respondent never filed such responses. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent devel-

oped a substance abuse addiction. The Hearing Panel concludes that the Respondent's addiction contributed to the misconduct in this case.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.' Standard 4.11.

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

'Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.' Standard 4.62.

### "RECOMMENDATION

"The Deputy Disciplinary Administrator recommended that the Respondent be indefinitely suspended from the practice of law. The Respondent concurred that he should be indefinitely suspended from the practice of law.

"While the conversion of client property ordinarily would result in disbarment, the Hearing Panel was persuaded by the mitigating factors in this case. At the hearing on this matter, the Respondent told the Hearing Panel about the personal difficulties he has endured during the past few years. The Respondent has struggled with depression and addiction to cocaine. The Hearing Panel wishes to commend the Respondent for the strides that he has made in getting his life back on track. The Hearing Panel hopes that the Respondent will be able to continue down the road to recovery he started one year ago.

"Based upon the findings of fact, conclusions of law, the Standards listed above, and the recommendations of the parties, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the state of Kansas.

"Costs are assessed against the Respondent in an amount to be certified by the office of the Disciplinary Administrator."

The Respondent files no exceptions to the panel's findings and conclusions; he also concurs in the panel's recommendation of indefinite suspension from the practice of law. The Respondent's conduct involving dishonesty and conversion of a client's property without any other considerations would normally warrant disbarment from the practice of law in Kansas. A minority of this court

would impose disbarment. However, a majority of this court would impose indefinite suspension from the practice of law in Kansas. The majority is persuaded by the panel's recommendation based upon the mitigating factors in this case.

This court has considered the final hearing report of the panel and the record on appeal and adopts the findings of fact, conclusions of law, and the recommendations of the panel. The findings and conclusions establish by clear and convincing evidence that respondent violated KRPC 1.1 (2005 Kan. Ct. R. Annot. 356), KRPC 1.3 (2005 Kan. Ct. R. Annot. 369), KRPC 1.4 (2005 Kan. Ct. R. Annot. 383), KRPC 1.5 (2005 Kan. Ct. R. Annot. 397), KRPC 1.15 (2005 Kan. Ct. R. Annot. 431), KRPC 8.4(c) (2005 Kan. Ct. R. Annot. 504), and Supreme Court Rule 207 (2005 Kan. Ct. R. Annot. 271).

IT IS THEREFORE ORDERED that respondent, Daniel H. Lampson, be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2005 Kan. Ct. R. Annot 247).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 (2005 Kan. Ct. R. Annot. 315), and in the event respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2005 Kan. Ct. R. Annot. 327).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to respondent.